IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action Number 05-cv-00305-RPM

CENTER FOR BIOLOGICAL DIVERSITY,
PACIFIC RIVERS COUNCIL and
BIODIVERSITY CONSERVATION ALLIANCE,

       Plaintiffs,

v.

UNITED STATES FISH AND WILDLIFE SERVICE,
RALPH MORGENWECK, in his official capacity as Regional Director (Region 6) of the United States Fish and Wildlife Service,
STEVEN WILLIAMS, in his official capacity as Director of the United States Fish and Wildlife Service, and
DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior,

       Defendants,

STATE OF UTAH and
STATE OF WYOMING,

       Defendant Intervenors.

_____

ORDER OF DISMISSAL
_____

       In this civil action, filed as a citizen suit under 16 U.S.C. § 1540(g), the plaintiffs challenge the decision of the Fish and Wildlife Service ("FWS") of the Department of the Interior that listing of the Bonneville cutthroat trout ("BCT") as a threatened or

endangered species under the Endangered Species Act ("ESA") was not warranted at the time. The notice of that finding was published at 66 Fed. Reg. 51362 on October 9, 2001, as the 12-month finding in response to a petition to list that species as threatened or endangered under the ESA. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(a). The decision was made after a "Full Status Review," following a 90-day finding published at 63 Fed. Reg. 67640 on December 8, 1998. 16 U.S.C. § 1533(b)(3)(A).

On February 16, 2006, the plaintiffs filed a motion for review of agency action and the full administrative record has been submitted. The standard for review is the same as the judicial review of administrative decisions under the Administrative Procedure Act, 5 U.S.C. § 706. Accordingly, to grant the plaintiffs' request that the notice be set aside and that the FWS be ordered to issue a new 12-month finding the plaintiffs must show that the issuance of the notice was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997).

The parties have filed their briefs and the State of Wyoming and State of Utah, as intervening defendants, submitted a joint memorandum brief.

A species is considered "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened"

if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).  As relevant to this case, the term "species" includes any subspecies and any distinct population segments of any species.  16 U.S.C. § 1532(16).  To determine whether a species is endangered or threatened, the Secretary must consider the following factors:

- (A) the present or threatened destruction, modification, or curtailment of its [the species'] habitat or range;
- (B) overutilization for commercial, recreational, scientific, or educational purposes;
- (C) disease or predation;
- (D) the inadequacy of existing regulatory mechanisms; or
- (E) other natural or manmade factors affecting its [the species'] continued existence.

16 U.S.C. § 1533(a)(1).  A species is to be listed if the Secretary determines "that the species is endangered or threatened because of any one or a combination of [these] factors. . . ."  50 C.F.R. § 424.11(c).

This determination is to be made "solely on the basis of the best scientific and commercial data available to [the Secretary]" after (1) conducting a review of the status of the species and (2) taking into account any efforts made by any State or political

subdivision of any State to protect such species, "whether by predator control, protection of habitat and food supply, or other conservation practices...." 16 U.S.C. § 1533(b)(1)(A).  *See also* 50 C.F.R. § 424.11.

There is no dispute that the BCT is a subspecies of cutthroat trout that historically was widely distributed throughout the Bonneville Basin in what are now the states of Nevada, Utah, Wyoming and Idaho.  It is also undisputed that the BCT population severely declined from human activities having devastating impacts on habitat during the years from 1850 to 1950.  Habitat degradation resulted from water development, timber harvest, livestock grazing, road building, and the BCT was also threatened by the introduction of other species and subspecies of fish, resulting in hybridization.  In 1984 the FWS conducted a status review and determined that listing the BCT was "warranted but precluded" by other higher priority activities.  49 Fed. Reg. 2485 (Jan. 20, 1984).

The change of position between then and the October, 2001, finding was due in large part to a determination that in the intervening years conservation efforts and management of these damaging activities have increased BCT populations identified as being present in five habitat areas, referred to as Geographic Units ("GU") categorized as (A) Bear Lake, (B) Bear River, (C) Northern Bonneville, (D) Western Bonneville and (E) Southern Bonneville.  These areas are distinct geographically and

hydrologically.  The FWS finding recites that the BCT occupy 852 miles of stream habitat, and 70,059 acres of lake habitat, with a total of 291 populations.

The plaintiffs argue that because the BCT is not found in more than 90% of its presumed historic range, the FWS failed to comply with the statutory requirement that the Secretary must determine whether a species is "in danger of extinction throughout all or a significant portion of its range," 16 U.S.C. § 1532(6); or threatened because it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).  Relying on *Defenders of Wildlife v. Norton,* 258 F.3d 1136 (9th Cir. 2001) and other cases as precedents, they argue that the FWS erroneously considered the viability of the BCT populations where the fish is now found.

The suggestion that a large percentage loss from an historic range of habitat will necessarily determine that a species is threatened or endangered was rejected by the 9th Circuit in the cited opinion.  That court recognized the ambiguity in the language selected by Congress and looked to the legislative history of the 1973 amendment to the ESA to reach the conclusion that where the area of survival is much smaller than the historical range there must be an explanation that the area no longer habitable is not a significant portion of the range of the species.  The court ordered a remand to enable the FWS to reconsider its determination.

5

The district court in New Mexico in *Center for Biological Diversity v. Norton,* 411 F. Supp.2d 1271 (D.N.Mex. 2005), interpreted the disputed language to mean that the current range is the relevant context and that significance refers to biology rather than geography.  Thus the court adopted the Secretary's interpretation that the population at risk is of such importance that its loss threatens the viability of the species as a whole.  That decision was appealed to the Tenth Circuit Court of Appeals.  The Secretary very recently moved for a remand to the district court with instructions to remand to the FWS for reconsideration of its determination that listing the Rio Grande cutthroat trout is not warranted to enable the FWS to apply a new analytical framework of factors to determine whether a portion of a range is "significant" as it has done with respect to the Gray Wolf in 72 Fed.Reg. 6106-01, 6115-6117 (Feb. 8, 2007).

In the absence of a controlling Tenth Circuit opinion, the New Mexico District Court opinion is persuasive in this matter.  Accordingly, the focus of the present inquiry is whether there is sufficient evidentiary support in the administrative record to conclude that the no listing determination was not arbitrary or capricious.

In the published notice, the FWS placed considerable reliance on conservation actions of the states of Utah, Wyoming, Idaho and Nevada, the Forest Service, the Bureau of Land Management, the Park Service, Tribal governments, Trout Unlimited and other involved parties and concluded that collaboration among these organizations

had increased more amicable resolution of land-use conflicts and provided better funding and commitment to conservation activities for the BCT.  The intervenors' joint memorandum describes these activities and efforts over the past 30 years in some detail, giving reference to the evidence of those activities in the Administrative Record.

The plaintiffs cite *Center for Biological Diversity v. Morgenweck,* 351 F.Supp.2d 1137 (D.Colo. 2004) and other cases in contending that the FWS may not rely on promises of voluntary future conservation efforts.  The *Morgenweck* case was a 90-day review of a citizen petition for listing.  That standard is different.  The *Morgenweck* case is therefore procedurally inapposite and here the FWS was relying on a history of conservation efforts and not on prospects for the future.  The plaintiffs also argue that voluntary efforts must be rejected when they are not enforceable through a regulatory mechanism.  That contention is rejected.  Cooperation with a demonstrated commitment to preservation of the species with the interaction of government and non-government agencies is inherently more effective than governmental edicts or mandates.

The plaintiffs characterize the defendants' and intervenors' briefs as "post hoc rationalizations" for the FWS decision and contend that the Tenth Circuit has rejected that approach in *Grogan v. Barnhart,* 399 F.3d 1257 (10th Cir. 2005).  The citation is to a judicial review of a Social Security disability decision under 42 U.S.C. § 405(g) and

the duties of an administrative law judge. It has no relevance to this case. Moreover, the defendants and interveners have supported their statements by references to the record upon which the FWS made its decision and the issue is not how complete the published notice is but whether it is supported by that record.

The plaintiffs also argue that the FWS did not adequately explain the threats to the BCT from hybridization, competition from the introduction of non-native fish and the threats posed by grazing. The record is to the contrary. The plaintiffs have attached Tables 1 and 2 as Exhibits D and E to their brief as an analysis of data within the Administrative Record. That information has not been considered in this Court's review because it is procedurally inappropriate.

Upon the foregoing, the conclusion is that the plaintiffs have failed to demonstrate that the notice of 12-month petition finding that the BCT listing as a threatened or endangered species is not warranted is arbitrary, capricious or contrary to law. It is therefore

ORDERED the motion to review is denied and this civil action dismissed with the defendants and intervening defendants to be awarded their costs.

DATED: March 7th , 2007

                                BY THE COURT:
                                s/Richard P. Matsch

                                _____
                                Richard P. Matsch, Senior District Judge